409 So.2d 1299 (1982)

Abner Glyn NALE, Plaintiff-Appellee,
v.
Beverly Diane Brown NALE, Defendant-Appellant.
No. 14739.
Court of Appeal of Louisiana, Second Circuit.
January 25, 1982.
*1301 Robert W. Levy, Ruston, for defendant-appellant.
Joseph A. Cusimano, Jr., Farmerville, for plaintiff-appellee.
Before PRICE, HALL and MARVIN, JJ.
PRICE, Judge.
Plaintiff, Abner Glyn Nale, obtained a separation a mensa et thoro from defendant, Beverly Diane Nale, on the grounds of abandonment and was awarded custody of their six-year-old daughter. Defendant appeals that portion of the judgment awarding custody of the child to plaintiff. We reverse.
Plaintiff and defendant were married in Arkansas on November 1, 1970, and thereafter established a matrimonial domicile in Truxno, a small community near Farmerville, Louisiana. Their only child, Bonnie, was born on July 28, 1975.
As a result of a period of marital discord, in May of 1980, defendant and Bonnie moved to an apartment in Farmerville. The parties made a subsequent attempt at reconciliation when plaintiff moved into the apartment with defendant and the child. On June 5, 1980, after a period of days, plaintiff was ordered to leave the apartment. This suit was instituted in August of 1980.
In written reasons for judgment, the trial court correctly noted that a legal presumption in favor of the mother no longer exists in child custody cases. However, it was the court's opinion that defendant's gender was the only favorable factor in her bid to gain custody of Bonnie. While finding the evidence did not establish adultery on defendant's part, the court stated she made a "practice" of entertaining men late at night in her home. The court further found there was a substantial risk that defendant's conduct, which the court considered to be in conflict with society's standards, would adversely affect Bonnie as she grew older.
The court also found defendant had engaged in certain erratic behavior which was likely to cause serious emotional disturbance to Bonnie. The court believed defendant's actions in making nocturnal visits to her recently deceased sister's grave, together with an incident where defendant shot at plaintiff, evidenced emotional instability on defendant's part. Considering these factors, the court held the best interests of the child would be served by awarding custody to plaintiff.
In child custody matters, the decision of the trial court is given great weight and will not be overturned upon appellate review in the absence of a clear showing of abuse of discretion. Cleeton v. Cleeton, 383 So.2d 1231 (La.1980); Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971). In the instant case we hold the trial court abused its discretion by placing undue weight on evidence unfavorable to defendant while not considering those factors which support an award of custody to the defendant.
A large portion of the testimony adduced at trial concerned defendant's relationships with certain males. The trial court found, and we agree, that the evidence does not establish any sort of sexual misconduct on defendant's part. In fact, the record documents only three, possibly four innocuous visits to defendant's home by her male friends. However, the trial court felt defendant's behavior was somehow improper and that Bonnie suffered by this activity.
In assessing if a parent's sexual lifestyle is cause for denying custody, the courts have consistently held the ultimate determination must be whether the behavior was damaging to the child. This determination involves several factors:
(1) Is the child aware of the illicit relationship?
(2) Has sex play occurred in the presence of the child?
(3) Was the sexual misconduct notorious, bringing embarrassment to the child? *1302 (4) What effect has this conduct had on the family home life?
Monsour v. Monsour, 347 So.2d 203 (La. 1977); Fulco v. Fulco, supra; Howes v. Howes, 388 So.2d 1182 (La.App. 4th Cir. 1980), writ denied 393 So.2d 738 (La.); Coltharp v. Coltharp, 368 So.2d 793 (La.App. 2d Cir. 1979), writ denied 370 So.2d 578 (La.).
In the instant case no sexual misconduct has been proven and there is absolutely no proof that Bonnie has suffered by her mother's actions. By all accounts, Bonnie is a well-adjusted, happy, and intelligent child. Any speculation as to the future ill effects which could be caused by the mother's innocent behavior is thus not supported by the record. Therefore, we find the trial court erred in concluding that the mother's behavior in this respect could adversely affect Bonnie.
Concerning defendant's emotional stability, it was established that prior to the couple's physical separation, defendant often visited her dead sister's grave at night. Evidence was also adduced that after the separation, in Bonnie's presence, plaintiff and defendant were involved in an altercation which resulted in defendant shooting at plaintiff.
Defendant was very close to her sister, who died of cancer. Considering that defendant has also undergone treatment for cancer, it is understandable that as part of the normal grieving process defendant would visit her sister's gravesite. The testimony indicates that prior to trial of this matter, defendant's visits to the cemetery had substantially decreased. In fact, the record is devoid of evidence showing that defendant has even visited the cemetery since the physical separation from her husband.
The shooting incident is a more serious matter. While there is some dispute as to the cause and reasons for the altercation, it is uncontroverted defendant fired a shotgun blast that hit near plaintiff after the parties had engaged in an argument. Both parties testified to their belief that defendant could have shot plaintiff if that had been her desire. The record indicates that defendant does not have violent propensities and has never directed any physical violence toward plaintiff or Bonnie before this incident. Considering the circumstances and the strong emotions of the parties, we do not believe that one isolated incident is evidence of emotional instability on defendant's part. In any event, there is no evidence that defendant's actions have caused the child harm.
While the trial court was correct in its determination that the maternal preference rule no longer exists, we find the court abused its discretion in failing to consider other factors in defendant's favor. It is uncontradicted that defendant has been a good mother to Bonnie. Under oath, both plaintiff and the child's paternal grandmother admitted that defendant has taken good care of Bonnie and is generally a good mother. Furthermore, since the child's birth, defendant has been mainly responsible for raising Bonnie and providing for her physical and emotional needs. Bonnie has been under the care and custody of defendant from the time of the physical separation of the parties up until this litigation. The record indicates Bonnie has progressed under her mother's care.
In determining the best interest of children, one of the factors to be considered is the desire to "continue them in the care of the parent who, in a normal situation, has provided the degree of continuous care and affection which creates such a close bond that it would be harmful to the children to alter that relationship...." Brackman v. Brackman, 322 So.2d 314 (La. App.2d Cir. 1975). Thus, the trial court erred in not considering the close natural bond that exists between defendant and Bonnie, a child of tender years. See Hegan v. Hegan, 367 So.2d 147 (La.App. 2d Cir. 1979).
Furthermore, as this court stated in Thornton v. Thornton, 377 So.2d 417 (La. App. 2d Cir. 1979):
... [I]t is often, in many if not most family circumstances, in the best interest *1303 of young children to be cared for by their mother. This nonmaterial concept remains a factor to be considered, along with many others, and will often compete with more materialistic factors that favor the father. It is correct, however, that this concept does not create a preference or presumption in favor of the mother that must be overcome by proof of the mother's unfitness or incapability.
See also Burch v. Burch, 398 So.2d 84 (La.App. 3d Cir. 1981); Deese v. Deese, 387 So.2d 671 (La.App. 3d Cir. 1980), writ denied 393 So.2d 740 (La.); Dickey v. Dickey, 383 So.2d 808 (La.App. 1st Cir. 1980).
Bonnie is now of school age. At the time of this litigation she was attending a school located only two blocks from her mother's apartment in Farmerville. The record shows Bonnie was doing very well in school. If Bonnie were to move to Truxno, she would still attend the same school, but would then have to travel approximately 13 miles each way. This factor also has bearing on the best interest of Bonnie.
Plaintiff is a building contractor who recently has worked only sporadically due to the poor economic conditions in the housing industry. Defendant has stable employment with Preaus Motor Company in Farmerville. The instant case does not present a situation where one parent is obviously unfit. On the contrary, the record indicates that either parent could adequately provide for the physical and mental well-being of Bonnie. However, the facts show that defendant was primarily responsible for raising the child from birth. The child has progressed while under the care of her mother. Further, the stability factor weighs heavily in favor of defendant since she has been the parent most intimately involved with raising the child and has had actual custody of Bonnie since the physical separation. The only factor weighing against the mother is the evidence of the shooting incident. In light of all the factors to be considered, we find the trial judge abused his discretion in granting custody to plaintiff instead of defendant.
For the above and foregoing reasons, the judgment of the district court as it pertains to the custody proceedings is reversed and set aside. It is ordered, adjudged, and decreed that there be judgment in favor of Beverly Diane Nale granting her custody of the child, Bonnie Nale. It is further ordered, adjudged, and decreed that this case be remanded to the district court for trial and determination of the issues of child support and visitation rights. Costs of these proceedings are assessed to plaintiff.
MARVIN, Judge, concurring:
This day we have rendered opinions in two appeals of child custody disputes, James v. James, 409 So.2d 1297 (La.App. 2d Cir. 1982), and Nale v. Nale, ___ So.2d ___ (La.App. 2d Cir. 1982). James discusses and distinguishes our recent child custody case of Manley v. Manley, 389 So.2d 454 (La.App. 2d Cir. 1980). I was on the appellate panel in these three cases, each of which involved the custody of a child under seven years of age.
In James, we affirmed a judgment removing custody of a four-year-old from the mother to the father. In Manley, we reversed a judgment removing custody of a three and one-half-year-old from the mother to the father. In Nale, we are reversing a judgment that removed custody of a six-year-old from the mother to the father. In each case, the trial court applied the best interest standard.
This court has consistently recognized that each custody controversy must be decided in the light of its own peculiar facts and that, in the absence of a showing of a clear abuse of discretion by the trial judge in resolving custody disputes, the appellate court will uphold the trial court's determination. See Johnston v. McCullough, 401 So.2d 509 (La.App. 2d Cir. 1981), as well as the cases here referred to. In Manley, we also recognized that custody, which has once been awarded to one parent who is providing a reasonably stable and secure environment for the child, should not be changed unless there are good and substantial reasons to justify the change. In Manley, we said:

*1304 "The fact that the mother has a steady boyfriend who frequents her home is not sufficient reason to justify a change in custody in the absence of proof that the mother's relationship with the boyfriend is having a detrimental effect on the child." 389 So.2d at p. 456.
In James we observed that all of the factors in that case, "taken together, ... support the conclusion that the mother's instability is detrimental to the child." 409 So.2d 1299 at p. 1297.
The instant case presents some, but perhaps not preponderating, evidence that Mrs. Nale has demonstrated instability (the shooting incident, etc., discussed in the majority opinion) but nonetheless, in no way does this evidence suggest that these incidents were detrimental to the child. I also observe that this "some evidence" does not compel the conclusion that the child should be removed from her mother because she "could" be affected by her mother's receiving male visitors in the future. "Permanent" custody may be changed upon a showing of changed circumstances which affect the child.
I respectfully concur in the result.