449 So.2d 629 (1984)
Diana McGuinness STEVENS
v.
Perry L. STEVENS.
No. 83 CA 1177.
Court of Appeal of Louisiana, First Circuit.
April 3, 1984.
*630 Robert W. Tillery, Hammond, for plaintiff-appellant.
Ron Macaluso, Hammond, for defendant-appellee.
Before SHORTESS, LANIER and CRAIN, JJ.
CRAIN, Judge.
This is an appeal from a judgment of the trial court in Tangipahoa Parish awarding custody of the minor child, Melissa Stevens, to her father, Perry Stevens, and ordering the mother, Diana McGuinness Stevens Wainwright (Diana McGuinness), to pay child support.

FACTS
Diana McGuinness and Perry Stevens were legally divorced by judgment signed May 7, 1982, in a proceeding entitled "Diana M. Stevens v. Perry L. Stevens" in Tangipahoa Parish (Tangipahoa Parish suit). At that time, custody of 6-year-old Melissa Stevens, the only child of the marriage, was granted to the mother, Diana McGuinness.
Diana McGuinness subsequently married David Wainwright and Melissa lived with them for a period of 11 months prior to the filing of these proceedings.[1] During that time, Perry Stevens exercised his visitation rights, as did members of his family, including his mother, Margaret Stevens.
In early April 1983, Margaret Stevens, with whom Melissa had spent the night, noticed signs of sexual abuse of the child while bathing her. Margaret Stevens related her suspicions to a friend who notified the Sheriff's Office to investigate the possibility of sexual abuse.
*631 On April 11, 1982, a medical examination made by Dr. Merlin Allen supported the allegation of sexual abuse. Custody of the child was then given by the court to Margaret Stevens pending an investigation by the Department of Health and Human Resources (Department). The investigation revealed that the child had been sexually abused by her stepfather, David Wainwright.[2]

LIVINGSTON PARISH JUVENILE PROCEEDING[3]
A 72-hour hearing was held, pursuant to La.C.J.P. art. 38, and Melissa was placed in the custody of the State prior to adjudication. La.R.S. 14:403(G)(7), La.C.J.P. art. 40. The District Attorney in Livingston Parish subsequently filed a petition requesting an adjudication that Melissa was "a child in need of care". See La.R.S. 14:403(B)(3) and (G)(9), La.C.J.P. arts. 13(14)(a), 45. On May 13, 1983, Diana McGuinness filed a petition for custody in the juvenile proceeding. A hearing was set and held on June 13-14, 1983.

TANGIPAHOA PARISH SUIT
On April 20, 1983, Perry Stevens filed a petition for custody in the Tangipahoa Parish suit. It was stipulated in the Livingston Parish juvenile proceeding that the evidence taken in that hearing would be introduced without objection in the Tangipahoa Parish suit and judgment would be rendered in both matters.

JUDGMENTS OF LOWER COURTS
Judgments were rendered in both suits on June 14, 1983. The judgment in the Tangipahoa Parish suit, signed June 24, 1983, granted permanent care, custody and control of the minor child, Melissa, to her father, Perry Stevens. Visitation privileges were granted to Diana McGuinness to be supervised by the Department. Diana McGuinness was further ordered to pay Perry Stevens $120 per month child support.
The judgment of disposition in the Livingston Parish juvenile proceeding, signed July 5, 1983, contained the same provisions as the Tangipahoa Parish judgment and, in addition, contained a provision relieving the Department "of any further obligation and/or responsibility in connection with the protective services and/or foster home care." We assume from this language and from the fact that Perry Stevens was awarded custody of the child that the trial judge concluded that Melissa was not a "child in need of care". See La.C.J.P. arts. 73, 76. We note this fact just for the record and since neither party appeals that determination, we affirm that judgment in 449 So.2d 633.
Diana McGuinness appeals both judgments insofar as each awards sole custody to Perry Stevens. She alleges that the requirements of La.C.C. arts. 146 and 157, in particular, the "best interests of the child" test, were not followed by the trial court. She also argues that the burden of proof required to change custody was not sustained and the presumption in favor of joint custody not rebutted. We consider these questions in this proceeding.

CHANGE OF CUSTODY
The versions of La.C.C. arts. 157 and 146 in effect at the time this custody determination was made, provided in pertinent part as follows:
Art. 157.
A. In all cases of separation and divorce, and change of custody after an original award, permanent custody of the child or children shall be granted to the parents in accordance with Article 146.
Art. 146.
A. If there are children of the marriage whose provisional custody is claimed by *632 both husband and wife, the suit being yet pending and undecided, custody shall be awarded in the following order of preference, according to the best interest of the children:
(1) To both parents jointly. The court, shall, unless waived by the court for good cause shown, require the parents to submit a plan for implementation of the custody order, or the parents acting individually or in concert may submit a custody implementation plan to the court prior to issuance of a custody decree. Such plan may include such considerations as the following:
(a) Domiciliary arrangements for the child or children.
(b) Rights of access and communication between the respective parents and the child or children.
(c) Child support, if appropriate to the economic circumstances of the parents.
(d) Any other matter deemed in the best interest of the child or children.
(2) To either parent. In making an order for custody to either parent, the court shall consider, among other factors, which parent is more likely to allow the child or children frequent and continuing contact with the non-custodial parent, and shall not prefer a parent as custodian because of that parent's sex. The burden of proof that joint custody would not be in a child's best interest shall be upon the parent requesting sole custody.
The best interest of the child is the sole criterion in determining when a change in custody is appropriate. Johnston v. McCullough, 410 So.2d 1105 (La.1982); Bordelon v. Bordelon, 390 So.2d 1325 (La. 1980); Faust v. Faust, 421 So.2d 428 (La. App. 1st Cir.1982). The standard of appellate review in child custody cases was stated by the Louisiana Supreme Court in Bordelon, 390 So.2d at 1329, as follows:
[T]he procedure for appellate review is to give great weight to the determination of the trial judge, and to overturn a determination only when there is a clear abuse of discretion. This test is substantially similar to the rule applied by the appellate court, which prevents the upsetting of a trial court determination of fact unless it is "clearly wrong". (citations omitted)
After hearing the testimony in this case and examining the home study reports made by the Department in both the homes of Diana McGuinness and Perry Stevens, the trial judge concluded that it was in the best interest of the child, Melissa, to live with her father, for the following reasons:
It is the opinion of the Court that the welfare of Melissa would best be served by having her live with her father, Perry Stevens. The fact that she would be living in the same apartment she lived in since her birth, and would be staying in the same room that she has lived in since birth, would give her some feeling of security of stability the Court feels that she needs at this time. Furthermore, living with her father may overcome some of the damage done to her psychologically by the step-father.
Also relevant is the fact that Perry Stevens has recently married and appears to be able to provide a secure family unit for Melissa at this time. On the other hand, Diana McGuinness presently lives alone with her youngest child, born of the marriage between her and Wainwright. (Presumably, either Wainwright or his family will be granted visitation rights for this child at some point in the future). Additionally, Diana McGuinness has immediate plans to move to New York should she regain custody.
Our review of the record reveals that the conclusions reached by the trial judge were not clearly wrong. Perry Stevens bore his burden of proof that a change in custody would be in the child's best interest; and consequently, the trial judge did not abuse his discretion in granting custody to the natural father.

JOINT CUSTODY
Diana McGuinness contends that the trial court erred in not making an award of joint custody as provided for in La.C.C. art. 146.
*633 At the time custody was awarded to Perry Stevens, La.C.C. art. 146 provided, in pertinent part.
C. There shall be a rebuttable presumption that joint custody is in the best interest of a minor child unless:
(1) The parents have agreed to an award of custody to one parent or so agree in open court at a hearing for the purpose of determining the custody of a minor child of the marriage; or
(2) The court finds that joint custody would not be in the best interest of the child.
Obviously, the trial judge felt that joint custody in this case was not in the best interest of the child. While there is a presumption that joint custody is in the best interest of the child, it is a rebuttable presumption that, in our opinion, was overcome in this case. We have previously found sexual abuse of a minor child by the stepfather a sufficient basis for a trial judge's finding that joint custody was not in the best interest of the child. Steagall v. Steagall, 442 So.2d 732 (La.App. 1st Cir.1983).
For the above reasons, the judgment of the trial court is affirmed. All costs are to be paid by the appellant.
AFFIRMED.
NOTES
[1] It is unclear from the record whether the Wainwright's actual domicile was in Tangipahoa or Livingston Parish. In appellant's brief, she lists Tangipahoa Parish as their domicile; however, in parts of the record their home address was listed as being in the town of Albany, Livingston Parish.
[2] Wainwright eventually admitted to the sexual abuse of Melissa. He pled guilty to indecent behavior with a juvenile and was given a five-year suspended sentence.
[3] We assume that Melissa was residing in Livingston Parish along with her mother and stepfather when the sexual abuse occurred, since the juvenile proceeding was brought in that parish. (See footnote 1).